IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

TIMOTHY STEELE PONDEL, o/b/o  )
TIMOTHY TODD PONDEL,          )
                              )
      Plaintiff,              )
                              )
v.                            )        No. 19-1078-TMP
                              )
ANDREW M. SAUL,               )
COMMISSIONER OF SOCIAL        )
SECURITY,                     )
                              )
      Defendant.              )
_____

**ORDER VACATING THE COMMISSIONER'S DECISION AND REMANDING
CASE UNDER SENTENCE SIX OF 42 U.S.C. § 405(g)**
_____

Before the court is plaintiff Timothy Steele Pondel's appeal on behalf of his late father, Timothy Todd Pondel, from a final decision of the Commissioner of Social Security ("Commissioner") denying Timothy Todd Pondel's application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-434. The parties have consented to the jurisdiction of the United States magistrate judge under 28 U.S.C. § 636(c). (ECF No. 10.) For the reasons below, the decision is vacated and remanded for consideration of new material evidence.

## I. FINDINGS OF FACT

On July 20, 2015, Timothy Todd Pondel applied for disability insurance benefits under Title II of the Act. (R. 437.) Pondel alleged disability beginning on January 1, 2015, due to anxiety,

degenerative disc disease, osteoporosis, back pain, arthritis, gout, a separated collar bone, blood poisoning, high blood pressure, and a thyroid condition. (R. 297-298.) Pondel's application was denied initially and upon reconsideration by the Social Security Administration ("SSA"). (R. 309; 328; 330.) At Pondel's request, a hearing was held before an Administrative Law Judge ("ALJ") on February 20, 2018. (R. 261.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Pondel was not disabled from January 1, 2015 through the date of his decision. (R. 196-208.) At the first step, the ALJ found that Pondel had not "engaged in substantial gainful activity since December 7, 2011, the alleged onset date." (R. 198.) At the second step, the ALJ concluded that Pondel suffers from the following severe impairments: degenerative disc disease of the cervical and thoracic spine, traumatic arthritis of the left hand, osteoarthritis of the bilateral knees, right elbow epicondylitis, hypertension, asthma, degenerative joint disease of the right shoulder, obesity, generalized anxiety disorder, and panic disorder. (R. 199.) At the third step, the ALJ concluded that Pondel's impairments do not meet or medically equal, either alone or in the aggregate, one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 199.) Accordingly, the ALJ had to then determine whether Pondel retained the residual functional

capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> [Pondel] can perform a range of work that is limited to: lifting and/or carrying up to 25 pounds occasionally, and up to 20 pounds frequently; standing or walking up to or about 6 hours and sitting up to or about 6 hours in an 8-hour workdays with normal breaks; frequent pulling or pushing with the bilateral upper extremities; frequent climbing of stairs or ramps; stooping, kneeling, or crouching; no climbing ladders, ropes, or scaffolds; occasional pull [sic]; occasional overhead reaching (bilateral upper extremities); frequent handling and fingering with the hands (bilateral); occasional exposure to pulmonary irritants such as dust, fumes, odors, gasses or poor ventilation; occasional exposure to workplace hazards like unprotected heights or dangerous moving machinery. [Pondel] can understand, remember or apply simple and detailed directions; can maintain concentration[,] persistence and pace for simple and detailed tasks; can have occasional interaction with the general public, coworkers and supervisors on a superficial bass [sic]; and can adapt to infrequent workplace changes.[1]

(R. 202.) The ALJ then found at step four that Pondel was unable to perform any of his past relevant work. (R. 206.) However, at step five the ALJ found that considering Pondel's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Pondel could perform. (R. 207.) Accordingly, on September 13, 2018, the ALJ issued a decision denying Pondel's request for benefits after finding that Pondel was

---

[1] It appears likely that the ALJ's conclusion that Pondel could engage in work limited to "occasional pull" is a typographical error, rather than a qualification of the earlier finding Pondel could engage in work limited to "frequent pulling or pushing with the bilateral upper extremities[.]"

not under a disability because he retained the RFC to adjust to work that exists in significant numbers in the national economy. (R. 196-208.)

On August 27, 2018, a little more than two weeks before the ALJ's decision, Pondel saw a rheumatologist for the first time, Dr. Emilio Rodriguez.[2] (R. 215.) Dr. Rodriguez diagnosed Pondel with moderate-severe rheumatoid arthritis with an onset three years earlier, changed Pondel's medication regimen, and scheduled a follow-up appointment a month later. (R. 215.) Dr. Rodriguez's treatment notes for the next visit in September 2018 reassessed Pondel's condition as severe and worsening. (R. 187.) Dr. Rodriguez observed that Pondel was suffering constitutional symptoms due to his rheumatoid arthritis, including fatigue, chills, fever, "eye symptoms," abdominal pain, and a rash. (R. 187-190.) Dr. Rodriguez ordered a more aggressive course of treatment. (R. 187.) At the same visit, Dr. Rodriguez completed a form assessing Pondel's postural and manipulative limitations, endorsing severe limitations in almost every category of activity. (R. 183-186.) Dr. Rodriguez's treatment notes for the next visit in October 2018 reassess Pondel's rheumatoid arthritis severity as moderate-severe, but note minimal improvement with pain and swelling. (R. 177.) Pondel was

---

[2]There is a reference in Dr. Rodriguez's treatment notes to an earlier visit three weeks prior. (R. 215.) However, the parties agree that this note is inaccurate, and that Pondel's first visit with Dr. Rodriguez was on August 27. (ECF Nos. 14 at 16 & 15 at 5.)

still suffering from constitutional symptoms and Dr. Rodriguez ordered a yet more aggressive course of treatment. (R. 177-178.) A few weeks later, Dr. Rodriguez assessed that treatment had reduced the severity of Pondel's symptoms, and that his rheumatoid arthritis was now of moderate severity. (R. 169.) However, Dr. Rodriguez noted Pondel's white blood cell count was unusually low. (R. 169.) In January 2019, after testing, Dr. Rodriguez diagnosed Pondel with Felty's syndrome. (R. 148.) Felty's syndrome is a serious complication of rheumatoid arthritis characterized by "hypersplenism with compromised immune competence[.]" 20 C.F.R. Part 404 Subpart P App'x 1 § 14.00(A)(6)(e)(iii). In treatment notes from the January visit, Dr. Rodriguez summarized Pondel's condition as having a duration of "many years," though in the same visit, he also said Pondel "[h]as new issue with Felty's syndrome with low wbc [(white blood cell)] counts and splenomegaly[.]" (R. 144.) Two days later, Pondel's kidneys failed and he had a resulting heart attack. (R. 64.) Pondel was rushed to the emergency room where he had several more heart attacks and died. (R. 63.)

In September and November 2018, and twice again in January 2019, Pondel's attorney petitioned the SSA's Appeals Council to remand the case back to the ALJ for reconsideration based on new material evidence, submitting Pondel's treatment records as they became available. (R. 8-192; 220-260; 416-421.) On March 12, 2019, the SSA's Appeals Council denied Pondel's request for review. (R.

1.) The ALJ's decision then became the final decision of the Commissioner. (R. 1.)

On May 1, 2019, Pondel filed the instant action. Pondel argues that: (1) new material evidence justifies remand to the Commissioner, and (2) the ALJ made various errors in weighing the medical evidence, developing the record, and formulating the RFC.

## II. CONCLUSIONS OF LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human

Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is

not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C. New Material Evidence**

Pondel argues the treatment records from Dr. Rodriguez and the medical records from Pondel's hospitalization before his death are new and material evidence.

A court may remand a case to an ALJ for review of additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g). "'[E]vidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding.'" Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 483–84 (6th Cir. 2006) (quoting Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001)). "[E]vidence is 'material' only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.'" Deloge v. Comm'r of Soc. Sec. Admin., 540 F. App'x 517, 519 (6th Cir. 2013) (quoting Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988)). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." Foster, 279 F.3d at 357. The burden of showing remand on this

ground is appropriate is on the claimant. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 839 (6th Cir. 2016).

Most of the records from Dr. Rodriguez are new. The treatment record of Pondel's first visit to Dr. Rodriguez is from before the ALJ's decision. (R. 215.) However, all of the other medical records related to Dr. Rodriguez's treatment were created after the ALJ's decision and are thus new. The records of Pondel's hospitalization before his death are new for the same reason.

The medical records are also material. Dr. Rodriguez is an examining physician opining in his area of specialty. Such an opinion is presumptively owed greater weight than opinions from non-examining state agency physicians. See Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012); 20 C.F.R. § 404.1527(c). The ALJ primarily relied on the opinions of non-examining state agency physicians in formulating the RFC. Furthermore, Dr. Rodriguez diagnosed Pondel with two impairments that had not been diagnosed by an acceptable medical professional before: seropositive rheumatoid arthritis and Felty's syndrome. (R. 144.) Felty's syndrome is a complication of rheumatoid arthritis characterized by "hypersplenism with compromised immune competence[.]" 20 C.F.R. Part 404 Subpart P App'x 1 § 14.00(A)(6)(e)(iii). These impairments may mean Pondel qualifies for a listing. Inflammatory arthritis satisfies listing 14.09(B) if there is sufficient evidence of:

> Inflammation or deformity in one or more major peripheral joints with:
>
> 1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and
>
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

20 C.F.R. Part 404 Subpart P App'x 1 (Listings) § 14.09(B). The "major peripheral joints" are the hip, knee, shoulder, elbow, wrist-hand, and ankle-foot. 20 C.F.R. Part 404 Subpart P Appx 1 (Listings) § 1.00(F); see also Dent v. Colvin, No. 13 C 4452, 2014 WL 4435455, at *11 (N.D. Ill. Sept. 5, 2014). Dr. Rodriguez's records show Pondel's rheumatoid arthritis affected Pondel's "bilateral shoulder, bilateral elbow, bilateral wrist, bilateral hand, bilateral mid[-]foot, and bilateral forefoot." (R. 187.) There is a reasonable probability an ALJ may conclude Pondel met the first part of this listing. The records also show the involvement of two or more organs/body systems. Felty's syndrome inherently involves the spleen (an organ) and the immune system (a body system). In addition, an ALJ might reasonably conclude that the hospital records showing Pondel died of a heart attack and renal failure in January 2019 support a finding that other organs/body systems were affected by Pondel's Felty's syndrome and rheumatoid arthritis. There is thus a reasonable probability an ALJ may conclude Pondel met the second part of this listing. Finally,

Dr. Rodriguez's records show Pondel suffered from fatigue, fever, and chronic pain. (R. 187-188.) There is a reasonable probability an ALJ may conclude that Pondel met the final part of this listing. Even if an ALJ concluded otherwise, Dr. Rodriguez's opinion has a reasonable probability of significantly affecting an ALJ's analysis of Pondel's subjective symptom severity and RFC.

The Commissioner argues this evidence is not relevant because it is from outside of the relevant period. But post-decision medical evidence is relevant if it is related to the claimant's condition at the time the ALJ's decision was issued. Harvey v. Comm'r of Soc. Sec., No. 16-3266, 2017 WL 4216585, at *9 (6th Cir. Mar. 6, 2017). In Harvey, evidence that the claimant had major surgery on his right knee six months after the ALJ's decision was relevant because it tended to show the severity of the claimant's ongoing condition. Id. There is a reasonable probability an ALJ could conclude that the same is true here – that Pondel's rheumatoid arthritis and Felty's syndrome were part of Pondel's ongoing impairments, not a subsequent worsening of Pondel's condition. There is evidence in the supplemented record for that. As early as 2014, radiology imaging showed Pondel's spleen was enlarged. (R. 938.) A nurse practitioner treating Pondel diagnosed him with rheumatoid arthritis in 2017. (R. 1139.) Dr. Rodriguez said that onset of Pondel's rheumatoid arthritis was gradual and the duration of his illness had been for "many years." (R. 144;

-13-

187.) Furthermore, the fact Pondel's condition was as severe as it was weeks or months after the ALJ's decision supports a common-sense inference that Pondel may have had disabling impairments at the time of the decision. Pondel has thus demonstrated materiality.

This leaves the good cause requirement. Pondel argues that the good cause requirement is satisfied because he and his treating medical professionals diligently attempted to obtain treatment from a rheumatologist for years, but were thwarted by insurance issues. The record supports Pondel's claim and reflects repeated efforts by Pondel's treating nurse practitioner to get Pondel a referral to a rheumatologist. (R. 899, 919, 926, 929, 1124, 1139.) Pondel has thus satisfied the good cause requirement, and shown this case should be remanded for consideration of new material evidence.

**D. Pondel's Other Arguments**

When an ALJ commits legal error or makes a decision that is not supported by substantial evidence, a court may order remand under sentence four of 42 U.S.C. § 405(g). In contrast, a decision to remand based on a showing of new and material evidence is based on sentence six of § 405(g). See generally Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 175 (6th Cir. 1994). This distinction matters because a court cannot direct an award of benefits in a sentence six remand, but can in a sentence four remand. Gates v. Comm'r of Soc. Sec., No. 15-14087, 2017 WL 405934, at *1 (E.D. Mich. Jan. 31, 2017). The scope of a court's review

when deciding whether remand is appropriate under sentence four is limited to the evidence properly before the ALJ at the time of his or her decision. Curler v. Comm'r of Soc. Sec., 561 F. App'x 464, 472 (6th Cir. 2014).

Because Pondel has shown remand for consideration of new material evidence is appropriate, it is only necessary to decide whether Pondel has demonstrated that an immediate award of benefits is appropriate under sentence four. "[R]emand for an immediate award of benefits may be made under sentence four of § 405(g) 'only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.'" Wiser v. Comm'r of Soc. Sec., 627 F. App'x 523, 526 (6th Cir. 2015) (quoting Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994)). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. (internal quotation marks and citation omitted). This does not describe the record before the ALJ at the time of his decision. Pondel is thus not entitled to remand under sentence four for an immediate award of benefits.

### III. CONCLUSION

For the reasons above, the Commissioner's decision is vacated and the case is remanded for proceedings consistent with this order. The court will retain jurisdiction until the post-remand

-15-

proceedings are completed and the Commissioner has filed the results with the Court. See <u>Shalala v. Schaefer</u>, 509 U.S. 292, 297 (1993).

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

December 17, 2019
Date